*214
 
 K. K. HALL, Circuit Judge:
 

 First National Bank of North East (Bank) appeals from a judgment of the district court affirming the bankruptcy court’s denial of its claims to certain mortgages assigned by Crystal Beach Manor, Inc. (C/B), a bankrupt corporation. We find the determination of the bankruptcy court clearly erroneous and remand for further proceedings.
 

 Gerald Exten was president and sole stockholder of Exten Associates, Inc. (Ex-ten, Inc.), a land development company. C/B was a wholly owned subsidiary of Ex-ten, Inc. with Gerald Exten as president. These companies purchased large tracts of land financed through Deeds of Trust to two large mortgage companies. Later they developed the parcels of land and sold them to individual buyers who executed mortgages in favor of C/B and Exten, Inc. In 1974, Exten, Inc. borrowed $156,166.04 jointly from the Bank and the First National Bank of Maryland.
 
 [1]
 
 Gerald Exten signed the notes in his capacity as president of Exten, Inc. and as president of C/B, and also personally guaranteed the loans. For collateral, 75 of the purchaser’s mortgages owned by C/B worth $184,000 were assigned to the banks “as their interests may appear.”
 

 The $156,166.04 in loan proceeds was deposited at the Bank in an escrow account in the name of Gerald Exten. From this account the proceeds were distributed as follows: $25,000 to a non-interest bearing hypothecation account
 
 [2]
 
 in the name of Ex-ten, Inc. as security for the loan; $3,786.09 to Liberty Aviation in the name of Gerald Exten; $2,500 to the Bank in service charges; $37,625 to MFS Service Corporation (MFS) through its attorney; $86,549.95 to Leonard Lockhart, attorney for Exten, Inc.; and the remaining $605 as interest on the loan.
 

 Leonard Lockhart, acting for Exten, Inc., deposited the $86,549.95 in an escrow account at the National Bank of Perryville along with other funds from a number of sources, including deposits on land purchases and settlement payments by C/B purchasers. From this account Lockhart distributed $36,403.50 to C/B in interest payments and transfer funds as well as $42,-375.00 to MFS in payment of a partial release on the Deed of Trust. It is not evident from the record which company, C/B or Exten, Inc., benefited from that partial release.
 

 The corporate assets of C/B consisted almost entirely of its mortgages and land. In 1974, the appraised value of C/B lots dropped from $1,800,000 to $800,000 as the result of a sewer moratorium in Cecil County. Since these corporate assets were valued at less than corporate liabilities, C/B filed a petition for Arrangement under Chapter XI on July 1, 1974, but the petition was,denied and the company adjudicated bankrupt on October 24, 1974. The Bank claimed the 75 C/B mortgages assigned to it as collateral on the loans. The bankruptcy trustee objected and a hearing was held. No transcript of the hearing was made since neither party requested transcription and recording of hearings was not, at the time, the practice of that particular court. All parties were present at the hearing as was Leonard Lockhart, who testified about his escrow account.
 

 Nothing happened until four years later when the bankruptcy judge, having since retired, returned to the bench to write his opinion in this case.
 
 [3]
 
 In the findings of
 
 *215
 
 fact, the bankruptcy court determined that C/B was insolvent from February 1,1974 to May 23, 1974 and that existing creditors in that period had provable claims against the corporation.
 
 [4]
 
 He held that C/B had fraudulently assigned 66 of the mortgages to the Bank because the assignments were made (1) while the corporation was insolvent, (2) within one year of bankruptcy, and (3) without fair consideration.
 
 [5]
 
 The bankruptcy court held that C/B did not receive fair consideration because only $36,403.50 of the bank loan was eventually disbursed to the benefit of C/B. The assigned mortgages were ordered to be returned to the trustee in bankruptcy along with any funds collected to date, less the $36,403.50 paid for the benefit of C/B. The mortgages have subsequently been reassigned to the trustee.
 

 The Bank appealed the judgment of the bankruptcy court and filed a contemporaneous motion to correct omissions from the record. In support of the motion, the Bank filed an affidavit from Leonard Lockhart explaining an attached list of disbursements from the Lockhart escrow account which was allegedly omitted from the bankruptcy court proceedings. The district court denied the motion to correct the record and affirmed the decision of the bankruptcy court on the grounds that its findings of fact were not clearly erroneous. The bankruptcy court order was modified by the district court to delete references to the First National Bank of Maryland since First National had not been joined as a party to the proceedings.
 

 The Bank now asks us to determine whether the refusal of the district court to supplement the record with the Lockhart affidavit and whether the absence of a transcript of the bankruptcy hearing requires a remand. Moreover, appellant contends that the bankruptcy court’s findings of fact were clearly erroneous.
 

 The Bank argues that the record is incomplete because no transcript was made of the bankruptcy court hearing. Thus the Bank urges us to overturn the district court’s denial of its motion to supplement the record with the affidavit of Leonard Lockhart which was written four years after the original hearing. This we cannot do.
 
 [6]
 
 At the time of the hearing, there was no requirement that proceedings of the bankruptcy court be transcribed; neither party requested that a transcript be made. Rules Bankr.Proc. Rule 511(a), 11 U.S.C. In such cases, lack of a transcript is not grounds for remand to the bankruptcy court, absent prejudice to one of the parties.
 
 In Re Namenson,
 
 555 F.2d 1067 (1st Cir. 1977)
 
 cert. den.,
 
 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142 (1977). The Bank argues that it has been prejudiced, but as the district court succinctly points out, its failure to request a transcript or move to supplement the record in the four year interim between the hearing and the decision invited the prejudice of which it now complains. The Bank’s failure to take appropriate measures to prepare a transcript cannot be used as a foundation for a claim of prejudice.
 

 Beyond the assertion that the district court erred in not granting its motion to supplement the record, the Bank urges üs to consider the Lockhart affidavit. This
 
 *216
 
 court cannot consider materials outside the record, and declines the invitation to do so.
 
 United States v. Chesapeake and Ohio Railway Co.,
 
 281 F.2d 698 (4th Cir. 1960); F.R. A.P. 10(e), 28 U.S.C.
 

 The Bank contends that the findings of fact by the bankruptcy judge, made four years after the hearing and after his retirement, were “clearly erroneous” according to Bankruptcy Rule 810. The factual finding in question is the bankruptcy court’s determination that the loan proceeds went to the benefit of Exten, Inc. even though the mortgages used as collateral were from C/B, thereby depriving other C/B creditors of all the mortgage assets except for the $36,403.50 transferred by Lockhart to C/B as interest and transfer payments. We are convinced that this finding of fact is clearly erroneous.
 

 The bankruptcy court found only two disbursements totalling $36,403.50 went to the benefit of C/B. Yet Exhibit 1A of the record is a letter sent by Lockhart to MFS enclosing $37,625.00 as a partial release fee “for the Deed of Trust covering the property of Crystal Beach Manor, Inc.” Counsel for the trustee in bankruptcy admitted with admirable candor that he could not explain why the bankruptcy court did not include this money in the amount included to the benefit of C/B. Since the uncontroverted record specifically contradicts the findings of the court below, the clearly erroneous standard is met and the case must be remanded.
 
 Teasdale v. Prosperity Co.,
 
 290 F.2d 345 (8th Cir. 1961).
 

 Having remanded on other grounds, we find it unnecessary to decide the issue of C/B’s insolvency.
 

 REMANDED.
 

 [1]
 

 .The relationship of these banks is ambiguous. First National Bank of Maryland was not a party to the bankruptcy court’s hearing on the claim, although it was named in the order. The district court caused First National Bank of Maryland to be stricken from that order. The record indicates that the Bank was acting as the servicing bank with 10% of the loan risk and that First National Bank of Maryland provided the funds to set off the remainder of the loan.
 

 [2]
 

 . A hypothecation account is one in which monies are placed to collateralize the remainder of the loan.
 

 [3]
 

 . The bankruptcy judge retired after conducting the hearing, but before deciding this case. The Chief District Court Judge appointed him temporarily after retirement as a bankruptcy judge in order to write opinions in cases he had heard which were stili pending.
 

 [4]
 

 . The bankruptcy court found that 66 of the mortgages were assigned during this period of insolvency. The record discloses that the six notes were executed between February 1, 1974, and May 22, 1974, and the money disbursed between February 1, 1974, and May 23, 1974.
 

 [5]
 

 . The bankruptcy judge made his findings pursuant to 11 U.S.C. § 107(d)(2), which provides in pertinent part:
 

 (2) Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent ....
 

 [6]
 

 .It is of some interest to the Court, however, that subsequent to the filing of appellee’s brief and pursuant to a check of Judge Kaiser’s “referee file,” made at the request of the Bank, the present bankruptcy court judge located Lock-hart’s list of checks marked by Judge Kaiser as defendant’s Exhibit 2.