**In re Bertice LeRoy JACOBSON, f/d/b/a Jacobson Dairy, Debtor.**

**Bertice LeRoy JACOBSON, Plaintiff,**

**v.**

**FIRST STATE BANK OF BENSON, a Minnesota corporation, and John Block, Secretary of Agriculture, Defendants.**

Bankruptcy No. 3–84–1517.
Adv. No. 84–0359.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

April 4, 1985.

Kurt M. Anderson, St. Paul, Minn., for debtor/plaintiff.

John Riches, II, Benson, Minn., for First State Bank of Benson.

James M. Rosenbaum, Joan Erickson, U.S. Attys., Minneapolis, Minn., for Block.

## MEMORANDUM ORDER FOR JUDGMENT

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came on for trial on March 15, 1985, at 9:30 a.m. The following appearances were made: Kurt Anderson for the Plaintiff; John Riches for Defendant First State Bank of Benson (Bank); and Joan Erickson for Defendant John Block, Secretary of Agriculture (FmHA). Plaintiff commenced this action on December 11, 1984, seeking, pursuant 11 U.S.C. § 548, to invalidate a mortgage foreclosure sale of his real property caused by Defendant Bank on January 30, 1984.

Based on testimony taken and evidence received at trial; arguments and briefs of counsel; and upon all the records, files and proceedings, the Court being fully advised in the matter, makes the following Order pursuant to the Rules of Bankruptcy Procedure.

### I.

Plaintiff is a dairy farmer who owned and operated 1,195 acres of farm land in Swift County. Prior to January 30, 1984, Defendant Bank held a second mortgage on 920 acres (the property) of the Plaintiff's land. Defendant FmHA held a third mortgage on the property. Both mortgages were subject to a first mortgage in favor of Federal Land Bank (FLB), which is not a party to this proceeding.

The Plaintiff defaulted on his mortgage to the Bank and, in foreclosure proceedings by advertisement, the Bank caused a sheriff's sale of the property which was held on January 30, 1984. At the time of the sale, the Plaintiff owed the following amounts on the mortgages:

| | |
|---|---|
| FLB | $ 192,399.98 |
| Bank | 303,990.97 |
| FmHA | 606,967.76 |
| Total | $1,103,358.71 |

The Bank bid in at the sale an amount of $303,990.97, representing the unpaid principal due upon its note, together with the accrued interest and statutory costs and disbursements. No other bidders were present and no other bids were received. Accordingly, the Bank was purchaser at the sale.

The Plaintiff filed a petition for relief in this Court under 11 U.S.C. Chapter 11 on August 21, 1984. Thereafter, on December 11, 1984, he commenced this action to invalidate the mortgage foreclosure sale pursuant to 11 U.S.C. § 548. Defendant FmHA exercised its right of redemption, subject to determination of this proceeding, pursuant to agreement of the parties and approval of the Court by Order February 4, 1985.

The Plaintiff claims that he received less than the reasonably equivalent value for his interest transferred at the foreclosure sale and, that, alternatively, he was either rendered insolvent by the sale or was left with unreasonably small capital to continue dairy farming. Defendants deny the claims.

### II.

11 U.S.C. § 548, prior to its 1984 amendment[1] provided, in pertinent part:

(a) The trustee may avoid any transfer of an interest of the debtor in property,

---

[1] The section was amended by The Bankruptcy Amendments and Federal Judgeship Act of 1984, but the amended statute applies only to cases filed after October 9, 1984.

or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur debts that would be beyond the debtor's ability to pay as such debts matured.

Mortgage foreclosure proceedings constitute transfers within the meaning of § 548. See: *In re Hulm*, 738 F.2d 323 (8th Cir. 1984).

Since Plaintiff premises his cause of action under § 548(a)(2), the first issue that need be addressed is whether he received the reasonably equivalent value in exchange for the transfer of his interest in the property. The Court concludes that he did not.

The Code does not define the term "reasonably equivalent value" and *In re Hulm, supra,* furnishes no guidance for applying the concept in the context of a fraudulent transfer action. The parties agree that what has become to be known as the *Durrett* rule of reasonably equivalent value— that being receipt of at least 70 percent of the value of the interest transferred—is a reasonable test in this case.[2]

The market value of the property must be determined as of the time of the foreclosure sale in order to determine the value received for the interest transferred at the sale. Four experts testified regarding market value of the property on the date of sale, January 30, 1984. Valuation by one of the Bank's experts, Harry Fenstra, was $1,317,300.00 and compares reasonably close with the Plaintiff's expert's testimony valuing the property at $1,360,-753.00.[3] The Court accepts Mr. Fenstra's appraisal for purposes of this proceeding and finds that the market value of the property was, on January 30, 1984, $1,317,-300.00.

Several methods have been used to determine whether a debtor has received the reasonably equivalent value of his interest purchased at foreclosure sale by the foreclosing creditor where more than one lien encumbered the property sold. See: *Gillman v. Preston Family Investment Co. (In re Richardson)* 23 B.R. 434, at 441 and 442, fn. 11, (Bankr.Utah 1982). The Court believes that the better method is to compare the purchase price at the sale to the interest transferred after first subtracting the nonforeclosing liens. *Richardson, supra.*

The calculation in this case is made as follows:

| | | |
|---|---|---|
| 1. Market Value of the Property | | $1,317,300.00 |
| 2. Less: nonforeclosing liens— FLB | | (192,899.88) |
| — FmHA | | (606,967.76) |
| 3. Plaintiff's interest in the property without regard to Bank's foreclosing | | |

---

**2.** See: *Durrett v. Washington Nat'l Ins. Co.,* 621 F.2d 201 (5th Cir.1980). Actually, *Durrett* did not enunciate such a rule, but held only in that particular case, where the debtor received 57.7 percent of the value of his interest transferred, he did not receive the fair equivalent value for purposes of 67(d)(1) of the Bankruptcy Act. Nevertheless, cases subsequent to *Durrett* have used a 70 percent benchmark based on language in *Durrett* that did not constitute part of the holding in the case. Section 67(d) of the Act was the predecessor of § 548(a) of the Code. See: *Coleman v. Home Savings Assn. (In re Coleman),* 21 B.R. 832 (Bankr.S.D.Kan.1982)

and *Gillman v. Preston Family Investment Co. (In re Richardson),* 23 B.R. 434 (Bankr.Utah 1982).

**3.** The Bank had two appraisers testify at the trial. Fenstra's appraisal was made in November 1984. The Bank sought a second opinion from another expert who made his appraisal on March 7, one week before the trial. The second appraiser, Larry Ashburn, valued the property at $992,680.00. Both appraisals related back to January 30, 1984.

lien (Debtor's interest in property transferred at sale) $517,932.26

4. Bank bid and purchase at sale (value received by Plaintiff) 303,990.97

5. Value received as a percentage of Plaintiff's interest transferred at the sale ($303,990.97 ÷ $517,982.26) 58 percent

Applying the 70-percent test, Plaintiff did not receive the reasonably equivalent value of his interest transferred at the sale, because the value received was only 58 percent of the interest transferred.

### III.

Since the Plaintiff did not receive the reasonably equivalent value of his interest in the property transferred, the Court must consider whether the transfer either rendered him insolvent or left him with unreasonably small capital. The Court concludes that the Plaintiff was not rendered insolvent by the transfer or left with unreasonably small capital.

Plaintiff testified from a prepared exhibit, Exhibit M, that prior to the sale, his total assets were $2,312,810.00 and that his total liabilities were $1,749,331.10. The asset figure must be adjusted to conform with the Court's finding regarding valuation of the property. The adjusted asset figure is $2,269,357.00.[4]

Plaintiff's pre-sale liabilities and net worth section of Exhibit M also must be adjusted. That section lists liabilities encumbering all real estate, totalling $1,103,-288.00. At the trial, Plaintiff testified that he omitted from the calculation, an amount owed on a contract for deed to the 275 acres not directly involved in this proceeding. Based on the omission, he adjusted the total stated liability figure upwards by $142,000.00 resulting in total stated liabilities of $1,749,331.10.

This figure is not an accurate computation. The FLB, Bank and FmHA mortgage indebtedness at the time of the sale, totalled $1,103,358.71. When the contract liability of $142,000.00 and other liabilities

listed in Exhibit M in the amount of $446,-455.10 are added, the total liability figure is $1,691,813.81.

Accordingly, on January 30, 1984, just prior to the sale, Plaintiff's total assets were $2,269,357.00 and his total liabilities were $1,691,813.81. He had a net worth of $577,543.19.

Plaintiff claims he was rendered insolvent by the sale because he lost the property, but retained the FmHA debt in the amount of $606,967.76 and the FLB debt in the amount of $192,399.98. He subtracts the market value of the property from the asset side leaving $952,057.00 in assets after the sale. He retains, however, the FLB and FmHA debts on the liability side, reducing the total liabilities by only the Bank's mortgage indebtedness of $303,-990.97. According to the Plaintiff's method of calculation, he is left with total liabilities of $1,387,822.84 and has a negative net worth of $435,765.84.

The Plaintiff's application to the balance sheet is inconsistent with the nature of the event it is intended to reflect. For purposes of § 548, only an interest of the Plaintiff in the property was transferred at the foreclosure sale. That interest was $517,932.26, which was the value of his equity of redemption, disregarding the non-foreclosing liens. Immediately following the sale, Plaintiff had the statutory right to redeem the interest transferred by paying to the foreclosure sale purchaser the purchase price.

Accordingly, the transaction had the following effect on the Plaintiff's balance sheet: Plaintiff's total assets were reduced by $517,932.26; his total liabilities were reduced by $303,990.97; and his net worth was reduced by $213,941.29. The calculation is set forth below:

| | | |
|---|---|---|
| Pre-sale Assets | $2,269,357.00 | |
| Less Sale Transfer | – 517,982.26 | |
| Post Transfer assets | | $1,751,424.74 |
| Pre-sale Liabilities | 1,691,813.81 | |

---

4. Plaintiff valued the property at $1,360,753.00. The Court finds the value of the property was at the time of the sale, $1,317,300.00. The difference is $43,453.00 and the total assets must be reduced by that amount.

| | | |
|---|---|---|
| Less Bank Debt Satisfied | $303,990.97 | −1,387,822.84 |
| Post Sale Net Worth | | 363,601.90 |
| Pre-sale Net Worth | | 577,543.19 |
| Post-sale Net Worth | | 363,601.90 |
| Reduction in Net Worth | | $ 213,941.29 |

This application is consistent with the analysis used to determine whether the Plaintiff received the reasonably equivalent value for the transfer. See: Part II., *supra.* Once the transfer is identified for purposes of determining reasonably equivalent value, the same transfer must be used to determine the question of insolvency. See: § 548(a)(2)(B)(i). *Contra, Coleman v. Home Savings Assn. (In Re Coleman)*, 21 B.R. 832 (Bankr.S.D.Kan.1982).

■ One further calculation need be made to determine whether the transfer rendered the Plaintiff insolvent. The Code defines the term insolvent, as it applies to this case, as follows:

> (A) with reference to an entity other than a partnership, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—
>
> (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
>
> (ii) property that may be exempted from property of the estate under section 522 of this title. 11 U.S.C. § 101(26)

Before excluding exempt property, the Plaintiff had, after the foreclosure sale, a net worth of $363,601.90. In his Schedule B–4, he claims a total of $197,000.00 in property as exempt. Even after subtracting the claimed exemptions, Plaintiff had a net worth of $166,601.90 after the sale. Therefore, he was not rendered insolvent by the transfer.

■ The final question that need be answered is whether the transfer left the Plaintiff with an unreasonably small capital to continue his dairy farming operation. The burden of proof on the issue falls upon the Plaintiff. The Court concludes that the burden has not been met.

The Plaintiff testified that loss of the property would result in loss of the dairy operation. All of his buildings appropriate for the operation are located on the property foreclosed. Approximately, one-third of his gross income is derived from dairy farming.

Again, for purposes of § 548, the relevant point of focus is the transfer at the sale of the Plaintiff's interest in the property. That transfer, valued at $517,932.26, diminished his net worth by $213,941.29 from $577,543.19 to $363,601.90. It did not deprive him of the property. The property itself remained with the Plaintiff following the sale, was subject to his right of redemption, and was available for his use during the statutory period of redemption. The Plaintiff's failure to timely redeem his interest transferred at the sale, deprived him of the property.

The transfer at the sale deprived the Plaintiff of $213,941.29 as a source of capital. The Plaintiff offered no evidence regarding his need for, or the availability of, any of his equity in the property, existing before or after the sale, as a source of capital.

Even if it were assumed: (1) that loss of the property is considered to have occurred at the sale; and (2) that the term "capital" used in § 548(a)(2)(B)(ii) is meant in the broad sense to include the unadjusted value of all assets, however encumbered; the Plaintiff has not sustained his burden of proof. The Bank offered persuasive testimony that the Plaintiff could operate a similar dairy operation at lower cost by renting land and facilities available in the same area instead of maintaining the property and servicing the debt encumbering it. Accordingly, the Court would be unable to find that the property itself constituted capital necessary to the continued operation of Plaintiff's business.

## IV.

■ Based on the foregoing, the Court concludes that the foreclosure sale caused by Defendant Bank January 30, 1984, regarding Plaintiff's property more particularly described in the complaint, was not a

transfer avoidable by Plaintiff pursuant to 11 U.S.C. § 548(a)(2). Although the Plaintiff received less than the reasonably equivalent value in exchange for his interest transferred at the sale, he was not, as a result of the transfer, rendered insolvent or left with unreasonably small capital with which to conduct his business.

NOW, THEREFORE, IT IS ORDERED: the Defendants, First State Bank of Benson and John Block, Secretary of Agriculture, are entitled to declaratory judgment, adjudging and decreeing that that certain mortgage foreclosure sale of Plaintiff's property more particularly described in Plaintiff's complaint, which sale was conducted January 30, 1984, did not result in a fraudulent transfer under 11 U.S.C. § 548 of the Plaintiff's interest in the property foreclosed upon. Defendants are entitled to their costs and disbursements as provided by law.

Let Judgment Be Entered Accordingly.