**In re Peter J. JOING, Debtor.**

**Peter J. JOING, Plaintiff,**

v.

**O & P PARTNERSHIP, Defendant.**

**Bankruptcy No. 3–84–891.**
**Adv. No. 85–0086.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

June 26, 1986.

William Kampf, Minneapolis, Minn., for plaintiff.

Peter Orlins, Richfield, Minn., for defendant.

## ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came on for trial on February 15, 1986, at 9:30 a.m. Sharon Fullmer and Katherine Bishop appeared representing the Plaintiff, Peter Joing. Peter Orlins appeared representing the Defendant, O & P Partnership. Plaintiff commenced this action on April 18, 1985, seeking to invalidate under 11 U.S.C. § 548, a mortgage foreclosure sale of his real property to Defendants.

Based upon the arguments of counsel, the evidence received at trial, and upon the file and records herein, the Court makes the following Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I.

Plaintiff Peter Joing and his ex-wife, Bonnie Joing, owned and occupied as their homestead a parcel of real estate in Dakota County, Minnesota, legally described as Lot Seven (7), Block One (1) of River Hills, Fourth Addition. Plaintiff, after separating from his wife, moved out of the premises in April of 1983 and obtained residence elsewhere.

On September 15, 1983, First Western Agency, Inc., the holder of a second mortgage on the property described above, issued a "Notice of Foreclosure". On November 10, 1983, the property was conveyed through a sheriff's sale to the Defendant, O & P Partnership. At the time of the sheriff's sale, Debtor was insolvent, and jointly owned the property with Bonnie Joing subject to $126,982.50 in liens as follows:

| | | |
|---|---|---|
| 1. | First mortgage to Minnesota Federal Savings and Loan | $41,192.95 |
| 2. | Second mortgage to First Western Agency, Inc. | 12,293.00 |
| 3. | Internal Revenue Service Tax Lien | 55,699.26 |
| 4. | State of Minnesota Tax Lien | 17,797.35 |

Defendant purchased the property by paying the sheriff $12,293.00 in cash to satisfy the foreclosing mortgage and assumed the first mortgage of $41,192.95. The IRS and the State of Minnesota neither bid at the sheriff's sale nor exercised their rights of redemption.

Bonnie Joing lived at the property through the six-month statutory redemption period which was set to expire on May 12, 1984. During this time, she unsuccessfully attempted to sell the property for $94,500.00. On May 11, 1984, Plaintiff filed a voluntary petition under Chapter 13 of the Bankruptcy Code.

Following the expiration of the redemption period, Bonnie Joing continued to live on the premises rent-free for three-and-one-half months in exchange for her promise to Defendant to keep the premises in presentable condition. At this time, the Defendant listed the property for sale at $94,500.00, but received no offers at this price. After an inspection of the premises revealed many needed repairs, Defendant asked Bonnie Joing to vacate the premises. According to the testimony of John Pierceall, a partner of Defendant, Defendant made

approximately $7,000.00 in repairs. Then on November 1, 1984, Defendant sold the house for $90,000.00.

During the time after the redemption period and up to the sale, Defendant kept the first mortgage current by making principal and interest payments totalling $6,618.89.

Although the parties agreed that there was no equity in the property on the date of the sheriff's sale, they presented conflicting testimony as to the precise value of the property on that date. Based on the testimony presented, and the lack of offers at the listing price of $94,500.00, the Court finds that the fair market value of the property on the day of the sheriff's sale was, at most, $90,000.00.

Plaintiff commenced this action on April 18, 1985, to invalidate the mortgage foreclosure sale pursuant to 11 U.S.C. § 548. Plaintiff originally alleged that he received less than the reasonably equivalent value of the interest transferred at the foreclosure sale. After trial, Plaintiff sought to amend his complaint, claiming, in the alternative, that the allegedly voidable transfer of interest occurred not at the foreclosure sale, but upon on the expiration of Plaintiff's or junior lienholders' redemption rights.

Plaintiff argues that in order to determine whether he received the reasonably equivalent value of his interest transferred at the sale, the Court should subtract only post-sale liens from the market value of the property (not the nonforeclosing tax liens), and compare the result with the amount paid at the sale. *See generally In re Richardson*, 23 B.R. 434 (Bankr.Utah 1982). His argument is premised on the assertion that the junior liens were extinguished by the foreclosure sale, and would not have been reinstated upon the Debtor's redemption.

Additionally, Plaintiff argues that the Court should strike Defendant's case-in-chief for failure of Defendant to comply with this Court's pretrial order requiring the parties to exchange witness and exhibit lists and trial briefs. Defendant did not timely comply with the order, and Plaintiff claims prejudice.

Defendant argues that Plaintiff received the reasonably equivalent value of his interest transferred, and that to determine this interest, the Court should subtract from the fair market value of the property all nonforeclosing liens (including the two tax liens), and compare the result to the bid. Defendant also argues that Plaintiff was not prejudiced by Defendant's failure to serve and file pretrial documents and that the Court should consider the evidence presented in Defendant's case-in-chief.

## II.

11 U.S.C. § 548, prior to its 1984 amendment[1], provided, in pertinent part, that: "the trustee may avoid any transfer of an interest of a debtor in property ... that was made ... on or within one year before the date of the filing of the petition, if the debtor (A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (B)(i) was insolvent on the date that such transfer was made ...."

■ Plaintiff, Debtor, has standing to pursue this matter under 11 U.S.C. § 522(h) which provides in pertinent part:

The debtor may avoid a transfer of property of the debtor ... to the extent that the debtor could exempt such property under subsection (g)(1) of this section if the trustee had avoided such transfer if:

(1) such transfer is avoidable by the trustee under section ... 548 ... of this title ... and;

(2) the trustee does not attempt to avoid such transfer.

The trustee has not pursued such an action. Since Plaintiff has claimed his interest in the property exempt under the Minnesota homestead exemption statute, and since no one has timely objected to the claimed ex-

---

**1.** This section was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, but the amended statute applies only to cases filed after October 9, 1984.

emption, he has standing to bring this § 548 action. *See* 11 U.S.C. § 522(1).

Defendant has not contested Plaintiff's allegation that Plaintiff was insolvent on the date of the transfer. Accordingly, the Court finds that Plaintiff was insolvent.

Previous case law applicable to this District recognized that mortgage foreclosure proceedings constitute transfers under § 548. *In re Hulm,* 738 F.2d 323 (8th Cir.1984). The issue under § 548, then, is whether Plaintiff received the reasonably equivalent value of his interest transferred.

■ This Court has determined in the past that the appropriate method of determining whether a debtor received the reasonably equivalent value of his interest transferred at a foreclosure sale is to compare the bid price to the fair market value of the property, after first subtracting all nonforeclosing liens.[2] *See In re Jacobson,* 48 B.R. 497, 499 (Bankr.Minn.1985). However, where, as in this case, a debtor had no equity in property at the time of its disputed transfer, no comparison need be made.

■ The value of the interest transferred here was the value of the foreclosing lien, $12,293.00. The Plaintiff's interest in the value transferred was one-half that amount, or $6,146.50, since he owned the property jointly with his former spouse. The value of what Plaintiff received was $12,293.00, representing cancellation of his joint and several liability on the indebtedness underlying the foreclosing lien. Accordingly, the Court concludes that the Debtor received at least the reasonably equivalent value of his interest transferred as required by 11 U.S.C. § 548.

■ Plaintiff seeks to amend his complaint alleging, in the alternative, that the transfer for purposes of § 548 occurred upon the failure of Plaintiff and junior lienholders to redeem, rather than at the foreclosure sale. The motion to amend is untimely and inappropriate since it changes the entire theory of the case, and was not seriously addressed by the parties at or before the trial. *See* Fed.R.Civ.P. 15(b). Even so, this Court has squarely addressed the issue in an earlier case and determined that the foreclosure sale itself is the date of transfer for purposes of § 548, not expiration of redemption. *See In re Kangas,* 46 B.R. 102 (Bankr.Minn.1985). Upon expiration of a redemption period, there is no interest to be transferred—there is merely the loss of an option or right of repurchase.

■ Furthermore, if there were interests to be transferred upon expiration of redemption in this case, such could only be the interests of the nonredeeming junior lienholders. Since there was never any equity of the Debtor in the property, any value ultimately "transferred" to the sale purchaser, that was in excess of the value of the foreclosing lien, resulted from the failure of *junior lienors* to redeem, and arguably constituted a transfer of their interests—not the Debtor's. Section 548 applies only to interests of a debtor in property transferred.

In conclusion on the issue, it is worth noting that the general purpose of § 548 is to allow a trustee, on behalf of an estate, (or a debtor, regarding an involuntary transfer of his interest in exempt property) to recapture equity in property of a debtor transferred to a third party prepetition. If the Court were to invalidate the transfer involved here, the tax liens would be reinstated and there would be no equity for the Debtor or the estate. No purpose of § 548 would be served by voiding the foreclosure.

Finally, the Court rejects Plaintiff's argument that he was prejudiced by Defendant's failure to comply with the pretrial

---

2. Plaintiff argues that an equity interest should be recognized by ignoring the tax liens junior to the foreclosing lien. The argument is premised on the assertion that if Plaintiff had timely redeemed following the sale, he would have taken his interest in the property back without reinstatement of these junior liens. The assertion is incorrect. A debtor, by redeeming, annuls the sale. The effect of the redemption is as if no sale had occurred—i.e., the property remains subject to all liens senior and junior to the foreclosing lien. *Clark v. Butts,* 78 Minn. 373 (1899), MINN.STAT. § 580.27.

order. Even if the Court completely accepted Plaintiff's evidence and excluded Defendant's evidence, the result in the case would not be different.

ACCORDINGLY, IT IS HEREBY ORDERED:

1. Plaintiff's motion to amend his complaint is denied as untimely.

2. The mortgage foreclosure sale to Defendant on November 10, 1983, of Lot Seven (7), Block One (1) of River Hills, Fourth Addition, in Dakota County, Minnesota, was a transfer for which the Debtor received the reasonably equivalent value, and is therefore, a transaction not avoidable under 11 U.S.C. § 548.

Let Judgment Be Entered Accordingly.