In re Peter J. JOING, Debtor,

v.

O & P PARTNERSHIP, Respondent.

No. 3–86 CIV 0719.

Bankruptcy No. 3–84–891.

Adv. No. 85–0086.

United States District Court,
D. Minnesota,
Third Division.

Feb. 3, 1987.

As Amended Feb. 29, 1988.

---

William I. Kampf, Fredrikson and Bryon, Minneapolis, Minn., for debtor.

Peter I. Orlins, Orlins and Brainerd, Richfield, Minn., for respondent.

## MEMORANDUM ORDER

ALSOP, Chief Judge.

The debtor in this Chapter 13 case, Peter Joing, appeals from the bankruptcy court's order, 61 B.R. 980, upholding a sale of the debtor's property. The facts found by the bankruptcy judge are not in dispute. The debtor and his ex-wife jointly owned real estate located in Burnsville, Minnesota. The bankruptcy judge determined the property had a market value of, at most, $90,000.00. As of November 10, 1983, the property was subject to the following liens and encumbrances amounting to $126,982.56:

| | | |
|---|---|---|
| 1. | First Mortgage to Minnesota Federal Savings & Loan | $41,192.95 |
| 2. | Second Mortgage to First Western Agency, Inc. | 12,293.00 |
| 3. | Internal Revenue Service Tax Lien | 55,699.26 |
| 4. | State of Minnesota Tax Lien | 17,797.35 |

On September 15, 1983, First Western Agency issued a "Notice of Foreclosure." At a sheriff's sale on November 10, 1983, respondent, O & P Partnership, purchased the property by paying $12,293.00 in cash and assumed the first mortgage of $41,192.95. Neither the IRS nor the State of Minnesota exercised their rights of redemption after the sale. On November 1, 1984, the respondent sold the property to a third party for $90,000.00.

The debtor in this case wishes to avoid the sheriff's sale under 11 U.S.C. § 548. Prior to its 1984 amendment,[1] section 548 provided in part:

(a) The trustee may avoid transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

    .     .     .     .     .

---

1. This amendment applies only to cases filed after October 9, 1984. *See* Act of July 10, 1984,

P.L. 98–353, Title III, Subtitle K, § 553(a), 98 Stat. 392.

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

. . . .

11 U.S.C. 548. The debtor succeeds to the rights of the trustee in cases involving exempt property under 11 U.S.C. § 522(h), which provides:

(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section ... 544, 545, 547, 548, 549, or 724(a) of this title....

11 U.S.C. § 522(h).

Neither party disputes the debtor's insolvency at the time of the sale in question, and the bankruptcy court found he has standing to sue under 11 U.S.C. § 522(h).[2] The principal issue presented in this case is whether the bankruptcy court employed the correct test for determining if the price bid at the foreclosure sale was reasonably equivalent to the interest transferred by a debtor who lacked equity in the property. 11 U.S.C. § 548(a)(2)(A).

The Bankruptcy Code does not define "the debtor's interest in the property," nor does it provide a test for measuring the value of the interest exchanged at the sale. Courts have employed at least three different rules in determining reasonable equivalence of value in cases involving sales under junior liens. See In re Richardson, 23 B.R. 434, 441 n. 11 (Bankr.D.Utah 1982), and cases cited therein. In Richardson, the Bankruptcy Court for the District of Utah concluded in dicta that the superior method of determining reasonably equivalent value is to compare the bid to the equity remaining in the property after sub-

tracting the post-sale liens from the value of the property. Id. at 442 n. 11. The court below noted that it has decided in the past that the appropriate method of determining whether a debtor received the reasonably equivalent value of his interest transferred at a foreclosure sale is to compare the bid price to the fair market value of the property, after first subtracting all non-foreclosing liens. See In re Jacobson, 48 B.R. 497, 499 (Bankr.D.Minn.1985). Thus the bankruptcy court for this district adopted the Richardson method with an important modification. Instead of subtracting the post-sale liens[3] from the value of the property, the Jacobson court decided to subtract all non-foreclosing liens including junior liens which were not redeemed. Jacobson, 48 B.R. at 499. This modification has become the crux of debtor's appeal in this action.

In this case, however, the bankruptcy court concluded the debtor lacked an equity interest in the property at the time of its disputed transfer, and therefore found it unnecessary to make either the Richardson or the Jacobson comparison. Instead, the bankruptcy court determined the value of the debtor's interest in the property when transferred was $6,146.50, which represents one-half of the value of the foreclosing second mortgage. The value the debtor received was $12,293.00, which represents cancellation of his joint and several liability on the indebtedness underlying the foreclosing lien. Comparing these values, the court concluded that the debtor received at least the reasonably equivalent value of his interest transferred as required by 11 U.S.C. § 548. 61 B.R. at 983.

█ This court cannot agree that in every case the appropriate method of determining whether a debtor received the reasonably equivalent value of his interest transferred in a foreclosure sale is to compare the bid price to the fair market value of the property, after first subtracting all non-foreclosing liens. See Jacobson, 48

---

**2.** See infra, n. 5.

**3.** I.e., all liens senior to the foreclosing lien as well as all junior liens which survive the fore-

closure sale, such as certain tax liens, see, e.g., 26 U.S.C. 7425.

B.R. at 499. Although this method insures the debtor is adequately compensated for whatever equity interest he may hold in the property, the debtor's equity interest is not his only interest in the property. Instead, state law creates a range of equitable and statutory "interest[s] of the debtor in the property" which are cognizable under § 548. *See In re Hulm*, 738 F.2d 323, 326–27 (8th Cir.1984). *See also In re Berrong*, 53 Bankr. 640 (Bankr.D.Colo.1985) (a debtor may employ 11 U.S.C. § 522(f)(1) to avoid a judicial lien on exempt property, in the proper amount which the debtor may claim as exempt, regardless of the amount of equity the debtor has in the property). Among the statutory interests relevant to "reasonably equivalent value" under § 548 is the debtor's right to the surplus, if any, available after satisfying the debt underlying the foreclosing mortgage out of the proceeds of the foreclosure sale. *Hulm*, 738 F.2d at 326; *see* Minn.Stat. § 581.06 (1986).

The facts of this case clearly illustrate the failure of the bankruptcy court's favored methodology to protect the debtor's statutory interest in having the surplus resulting from the sale of the property applied in his favor. Debtor in this action is attempting to adjust his debts under Chapter 13 of the Bankruptcy Code. Few events could be more helpful to this effort than the partial satisfaction of one of the debtor's obligations out of the surplus proceeds of the foreclosure sale available after satisfaction of the obligation secured by the foreclosing second mortgage and assumption of the first mortgage. Therefore, although the debtor lacks equity in the property, his statutory interest in the surplus proceeds of the foreclosure sale nevertheless is a real and potentially valuable interest. The *Jacobson* rule, however, fails to recognize this interest under the facts of this case. Instead, the pointlessness of this comparison when the debtor has no equity in the property at the time of its disputed transfer, as in this case, resulted in the abandonment of the *Jacobson* rule by the bankruptcy court. The court below then went on to assume that a sale for the value of the foreclosing lien provides the debtor the reasonably equivalent value of his interest transferred as required by 11 U.S.C. § 548. *In re Joing*, 61 B.R. at 983. This court cannot agree with his analysis.

Despite this court's appreciation of the desirability of a black letter rule in an area of law such as this, establishing such a rule is impracticable here due to the infinite variety of circumstances in which reasonable equivalence issues may arise. Therefore, it would be improvident to accept or reject for all time any of the specific methods previously employed by other courts to identify reasonably equivalent value. For example, the court's rejection today of bankruptcy court's decision to apply the *Jacobson* rule to the facts of this case does not mean this analysis would be improper when there are no liens junior to the foreclosing lien. Conversely, the assumption of the first mortgage by the purchaser in this case may remedy the principal objection to the method employed in *In Re Madrid*, 10 B.R. 795 (Bankr.D.Nev.1981), *rev'd* 21 B.R. 424 (Bankr. 9th Cir.1982), *aff'd on other grnds.*, 725 F.2d 1197 (9th Cir.), *cert. denied*, 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984). There the court compared the price bid at a sale following foreclosure of a second mortgage plus the value of the nonforeclosing senior lien to the fair market value of the property. *Id.* at 797. This comparison has been criticized as crediting the purchaser for value it did not give because the purchaser did not assume the senior mortgage and thus the debtor remained personally liable for the underlying obligation. *In re Richardson*, 23 B.R. 434, 442 n. 11 (Bankr.D.Utah 1982). If defendant's assumption of the senior mortgage in this case relieved the debtor of his personal obligation, the *Richardson* court's criticism of the *Madrid* comparison is inapposite.

■ The foregoing discussion illustrates the importance of evaluating each reasonable equivalence case on its particular facts. The Eighth Circuit Court of Appeals has already rejected the presumption that a sale price obtained without fraud or collusion at a regularly conducted foreclosure

sale can automatically be deemed to provide reasonably equivalent value in exchange for the interest of the debtor transferred within the meaning of section 548(a). *In re Hulm*, 738 F.2d 323, 327 (8th Cir. 1984); *see In re Madrid*, 21 B.R. 424, 427 (Bankr. 9th Cir.1982) (setting forth presumption rejected in *Hulm* ). *Accord, e.g., In re Ruebeck*, 55 B.R. 163, 167 (Bankr.D. Mass.1985); *In re Adwar*, 55 B.R. 111, 115 (Bankr.E.D.N.Y.1985) (following *Hulm* ). Thus a bankruptcy court in this circuit must hold an evidentiary hearing to develop a record from which a reasonable equivalence evaluation can be made. *Hulm*, 738 F.2d at 327. The bankruptcy court should consider such of the many factors affecting this evaluation as are relevant under the particular circumstances of the case before it. *See Lower Downtown Associates, L.P. v. Brazosbanc Savings Ass'n*, 52 B.R. 662, 667 (Bankr.D.Colo.1985). The court may employ for its guidance any comparative formula or combination of formulas it deems appropriate, while carefully considering whether the analysis employed fully recognizes the relevant factors and protects the interests of the parties. Plainly, no one formula can meet these requirements in every case. Hence, the court should avoid viewing any test as dispositive of all reasonable equivalence cases. *See In re Willis*, 48 B.R. 295, 301 (S.D.Tex.1985); *Lower Downtown Associates*, 52 B.R. at 666.

■ Based upon the foregoing discussion, this court will remand this matter to the bankruptcy court.[4] That court should reconsider its determination that the debtor received the reasonable equivalent of his interest transferred at the foreclosure sale, taking into account the debtor's statutory interest in the surplus proceeds, if any, of the sale. As a part of this reconsideration,

the bankruptcy court is free to review its statement that the fair market value of the property on the day of the sheriff's sale "was, at most, $90,000.00," because this court views that statement as having been unnecessary to the bankruptcy court's decision of June 26, 1986. Should it decide to review this statement, the court may, if it appears appropriate, consider the sums respondent expended in obtaining, repairing, and reselling the property, the effect of the foreclosure proceeding itself, and the cost of permitting the debtor's ex-wife to occupy the property for some time without rent following the sale. In the event the bankruptcy court determines the debtor did not receive reasonably equivalent value for his interest, it must invalidate the foreclosure sale pursuant to 11 U.S.C. § 548(a). The court recognizes that the debtor may nevertheless be unable to recover the property from the ultimate purchasers, *In re Coleman*, 21 B.R. 832, 837 (Bankr.S.D.Tex. 1982), and that recovery of the property is not the remedy the debtor seeks in any event. Brief of Appellant at 8.

Therefore, the bankruptcy court may award to the Trustee whatever sum that court determines to represent the difference between the value of the interest transferred and the price bid by defendant. *In re Hulm*, 45 B.R. 523, 529 (Bankr.D.N. D.1984) (recovery should be the value of the property transferred, not the property itself); 11 U.S.C. § 550(a) (trustee may recover property transferred "to the extent" the transfer is avoided); 4 *Collier on Bankruptcy*, ¶ 550.02, 550–4, 5 n. 2 (15th ed. 1986) (same).[5]

The court recognizes that the possibility that a foreclosure sale may be avoided even after the expiration of all redemption periods will complicate the foreclosure and re-

---

4. The bankruptcy court need not hold a second evidentiary hearing.

5. Defendant claims that the debtor lacks standing to avoid the foreclosure sale under section 522 because the debtor testified at trial that he vacated the property thirteen months before filing his Chapter 13 petition. Brief of Appellee at 12–13 (discussion of "Issue Number Three"). *See* Minn.Stat. § 510.07 (owner who ceases to occupy homestead for more than six months

abandons the homestead unless he files proper notice). The bankruptcy court noted, "no one has timely objected to the claimed exemption," and concluded the debtor has standing to bring this action. Neither party provided this court with a transcript of the proceeding below. Therefore, the court is unable to review respondent's claim. *See First Nat'l Bank of North East v. Fockler*, 649 F.2d 213, 215 (4th Cir.1981).

demption strategies attending the foreclosure sale. This, in essence, is the objection raised by the defendant as its "Issue Number Two". Brief of Appellee at 1–2. As the Eighth Circuit Court of Appeals has noted, however, such policy considerations must be addressed, if at all, by Congress. *Hulm,* 738 F.2d at 327.

Upon the foregoing, the submissions and arguments of the parties, and the record as presently constituted,

IT IS ORDERED That the bankruptcy court's order of June 26, 1986, be and the same hereby is vacated and this matter is remanded to the bankruptcy court for further consideration consistent with this opinion.