## In re ADVANCED AVIATION, INC., Debtor.

## ADVANCED AVIATION, INC., Plaintiff,

v.

## Marvin VANN and Mary Vann, his wife, Defendants.

**Bankruptcy No. 88–1274–BKC–6P1. Adv. No. 88–256.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

June 2, 1989.

Frank M. Wolff, Maitland, Fla., for plaintiff.

R. Edward Cooley, Longwood, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court upon debtor's complaint seeking to void defendants' security interest in certain inventory, equipment and accounts receivable pursuant to 11 U.S.C. § 544(a). A trial of this matter was held April 13, 1989, and upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

In October of 1981, the defendant, Marvin Vann, and three other individuals caused a corporation to be formed and to be known as Advanced Aviation, Inc. ("Advanced Aviation"). The initial capital contribution was $50,000.00, all of which was paid by the defendants, Marvin and Mary Vann. The defendants were credited with $9,000.00 as a capital contribution and received promissory notes from both the corporation and the other individuals for the remaining $41,000.00.

On July 20, 1984, Advanced Aviation borrowed $75,000.00 from Sun Bank, N.A. ("Sun Bank"). To secure the loan, Sun Bank was given a security interest in debtor's accounts receivables, inventory and equipment. In addition, Sun Bank received a mortgage on a home owned individually by debtor's president, Wayne Richter. To perfect the security interest in the debtor's assets, Sun Bank filed a UCC–1 Financing Statement with the Clerk of the Court of Orange County, Florida, and with the Secretary of State in Tallahassee, Florida.

On or about April 1, 1985, the defendants prepared a worksheet describing the principal and interest due on the promissory notes issued in October, 1981. The worksheet shows the total amount owing to the defendants is $68,220.25. Advanced Aviation executed a promissory note and security agreement in favor of the defendants for $68,220.25 (the "68,220.25 Note"). The note consolidated all loans then owing to the defendants and was secured by debtor's equipment and inventory and a UCC–1 Financing Statement was prepared and filed with the Clerk of the Court of Orange County, Florida. The defendants failed to file a UCC–1 Financing Statement with the Secretary of State in Tallahassee, Florida.

On April 23, 1985, the defendants agreed to loan Wayne Richter an additional $23,-

000.00 and to purchase the $75,000.00 Sun Bank Note. Pursuant to this agreement, Sun Bank assigned the Sun Bank Mortgage to the defendants who in turn executed, delivered and recorded a Satisfaction of the Sun Bank Mortgage acknowledging "full payment and satisfaction of said note and mortgage deed and surrender same as cancelled."

Upon receipt of the Satisfaction, Wayne Richter and his wife signed a new Note (the "Richter Note") and Mortgage Agreement (the "Richter Mortgage") for $98,-000.00, evidencing the new indebtedness to the defendants. This loan superceded the $75,000.00 Sun Bank Note and was not related to the $68,220.25 Note (i.e. there were, in fact, two separate loans).

In May of 1987, the Richters defaulted under the terms of the Richter Note. After negotiations, the Richters agreed to give the defendants a Deed in Lieu of Foreclosure in full satisfaction of their obligation. The Deed in Lieu of Foreclosure was executed and delivered on May 27, 1987, and was accompanied by a Satisfaction of Mortgage (the "Richter Satisfaction"). Both the Deed in Lieu of Foreclosure and the Richter Satisfaction were recorded and the Richters turned over possession of their house to the defendants in May of 1987.

On May 27, 1988, Advanced Aviation filed a petition for relief with this Court under Chapter 11 of the Bankruptcy Code. 11 U.S.C. § 1101, *et seq.* This adversary proceeding intends to avoid defendants' unperfected security interest in inventory, equipment and accounts receivable.

## CONCLUSIONS OF LAW

The complaint is predicated upon 11 U.S.C. § 544(a)(1). That statute reads:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

This section is commonly referred to as the trustee's "strong-arm" clause. It allows the trustee to invalidate certain transfers, as if he were in actuality a creditor with priority over an unperfected security interest. In other words, § 544(a) permits the trustee to exercise whatever rights of avoidance any creditor holding a secured claim could have exercised on his own behalf under applicable law.

Section 544(a) is an essential tool to be used by the trustee in an effort to insure that all of the debtor's property is distributed equally according to the scheme of the Bankruptcy Code. By virtue of § 1107, the debtor-in-possession is granted such rights and may bring an action to void unperfected security interests in accordance with § 544(a).

██ In this proceeding, plaintiff contends that the failure to properly record the $68,220.25 Note with the Secretary of State entitles debtor to void the transfer of the defendants' security interest in debtor's inventory, equipment and accounts receivable pursuant to § 544(a). The Court agrees.

Florida Statutes § 679.401(1) provides that a financing statement, other than one evidencing a security interest in timbers, minerals, or fixtures, must be filed with the Secretary of State. Failure to properly file the financing statement does not invalidate the security interest, but does entitle a subsequent lien creditor without notice of the security interest to assert priority. Pursuant to § 544(a), the debtor-in-possession assumes the position of a subsequent lien creditor without knowledge, even though one may not, in fact, exist.

Nevertheless, defendants contend that they are entitled to rely upon § 679.401(2), Florida Statutes, which provides that improper filings made in good faith are valid against creditors with knowledge of the

filing contents. Defendants suggest that plaintiff, as a party to the security agreement, had actual notice of the security interest and cannot assert priority over the defendants' security interest.

Section 544(a) states that the trustee has, *without regard to any knowledge of the trustee or of any creditor,* the rights and powers of a hypothetical lien creditor as of the commencement of the case. According to the statute then, the debtor may assert priority over an improperly perfected security interest even though he may have had actual or constructive notice of the lien. By virtue of the Supremacy Clause of the United States Constitution, the provisions of § 544(a) supersede state law on this point. Therefore, the debtor's knowledge of the contents of the security interest is irrelevant.

■ Perhaps anticipating such result, the defendants alternatively argue that they may rely upon Sun Bank's properly filed financing statement to give notice of their security interest in inventory, equipment and accounts receivables. The Court does not agree with this premise.

The satisfaction of the mortgage delivered by the defendants to plaintiff canceled the Sun Bank Note and Security Agreement. In extinguishing the note, the security interest was also terminated. A security interest cannot exist independent of the obligation it secures. *In re Disanto & Moore Associations, Inc.,* 41 B.R. 935, 938 (D.N.D.Cal.1984); *In re Belize Airways, Ltd.,* 7 B.R. 604, 607 (Bkrtcy.S.D.Fla.1980).

In *In re Screens Unlimited, Inc.,* 9 B.R. 186 (Bkrtcy.M.D.Fla.1981), the court was faced with a similar factual situation. There, a creditor sought to enforce a lien against the debtor by claiming an assignment of a senior creditor's security interest. That court found that even if the creditor derived rights from the senior lienholder by virtue of the assignment, the senior lienholder's security interest was extinguished when paid or satisfied. Thus, it follows that an assignee cannot obtain secured status from a satisfied obligation, even though a UCC–1 is still on record for the first obligation. *Id.*

In this proceeding, the defendants are seeking to rely on a UCC–1 financing statement filed by Sun Bank. However, Sun Bank's security interest was terminated when the Sun Bank Note was satisfied. Defendants can have no rights under Sun Bank's UCC–1.

■ Furthermore, the defendants cannot suggest that they are secured by virtue of the cross-collateralization language contained in the Sun Bank Note. The recognized policy throughout the United States is that a cross-collateralization clause is only enforceable between the original parties to a transaction and cannot be enforced by a third party. *First Southern Development Corp. v. Chandler,* 477 So.2d 360, 42 U.C.C.Rep.Serv. 317, 320 (Ala.1985). The Sun Bank note clearly recognizes this policy and provides on its face that the collateral will secure future obligations of the debtor *to the Bank.*

In *First Southern Development,* the Alabama Supreme Court held that an assignee of a note containing a future advance clause could not claim a security interest to satisfy the debtor's liability on a separate note. In this case, the defendants are seeking to enforce their improperly perfected security interest by way of the future advance clause contained in Sun Bank's Note. As a third party, the defendants lack standing to enforce this clause.

■ Finally, the defendants contend that they are equitably subrogated to Sun Bank's position by paying off the Sun Bank note. It is uncontroverted that the defendants had no property subject to Sun Bank's lien. The defendants simply offered to repay the Sun Bank obligation on behalf of the Richters. Equitable subrogation does not apply when the person seeking subrogation voluntarily pays an obligation for which he is not liable. *See, e.g., In re Disanto, supra* at 939; *Trueman Fertilizer Co. v. Allison,* 81 So.2d 734 (Fla. 1955); *Rebozo v. Royal Indemnity Company,* 369 So.2d 644, 646 (Fla. 3d DCA 1979). In this case, the defendants had absolutely no obligation to pay the Sun

Bank debt. Therefore, they cannot be equitably subrogated to Sun Bank's claim.

The Court concludes that the plaintiff is entitled to void defendants' unperfected security interest in inventory, equipment and accounts receivable pursuant to 11 U.S.C. § 544(a).

The Court will enter a separate order in accordance with this finding.