# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 11-6062

_____

| | |
|---|---|
| In re: | * |
| | * |
| Negus-Sons, Inc., | * |
| | * |
| Debtor | * |
| | * |
| Rick D. Lange, Chapter 7 Trustee, | * |
| | * Appeal from the United States |
| Plaintiff – Appellee, | * Bankruptcy Court for the |
| | * District of Nebraska |
| v. | * |
| | * |
| Mutual of Omaha Bank, | * |
| | * |
| Defendant – Appellant, | * |
| | * |
| United States Treasury, Internal | * |
| Revenue Service; Contractors, | * |
| Laborers, Teamsters and Engineers | * |
| Pension Plan; Contractors, Laborers, | * |
| Teamsters and Engineers Health and | * |
| Welfare Plan; International Union of | * |
| Operating Engineers, Local No. 571 | * |
| | * |
| Defendants – Appellees | * |

_____

Submitted: November 30, 2011
Filed: December 22, 2011

_____

Before KRESSEL, Chief Judge, SCHERMER, AND VENTERS, Bankruptcy Judges.

_____

VENTERS, Bankruptcy Judge.

Defendant Mutual of Omaha Bank appeals the order of the bankruptcy court[1] granting a motion for summary judgment filed by Plaintiff Rick D. Lange, the Chapter 7 trustee ("Trustee") of the Debtor's bankruptcy estate. The Trustee sought, and the bankruptcy court entered, an order determining that Mutual of Omaha does not have a security interest in certain of the Debtor's personal property ("Property"). Defendant–Appellee United States and Defendant–Appellees the Contractors, Laborers, Teamsters and Engineers Pension Plan; the Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan; and the International Union of Operating Engineers, Local No. 571 (collectively, the "Union Plans") filed briefs in support of the Trustee's position.[2]

For the reasons stated below, we affirm the decision of the bankruptcy court.

## STANDARD OF REVIEW

Findings of fact are reviewed for clear error, and legal conclusions are reviewed *de novo*.[3] The bankruptcy court's grant of summary judgment is reviewed *de novo*.[4]

---

[1] The Honorable Timothy J. Mahoney, United States Bankruptcy Judge for the District of Nebraska.

[2] As indicated in the caption, Mutual of Omaha was one of several defendants named in the Trustee's complaint to determine the existence, validity, and extent of liens claimed in the Debtor's personal property. A trial was set on issues remaining after the entry of summary judgment on Mutual of Omaha's interests, but a stipulation among the Trustee, the IRS, and Union Plans negated the need for a trial. On August 18, 2011, a judgment was entered on the entire adversary proceeding.

[3] *See In re Waterman*, 248 B.R. 567, 570 (B.A.P. 8th Cir. 2000).

[4] *See U.S. v. Horras*, 443 B.R. 159, 161–62 (B.A.P. 8th Cir. 2011) (citing *Taylor v. St. Louis County Bd. of Election Commissioners*, 625 F.3d 1025, 1028 (8th Cir. 2010)).

# BACKGROUND

Debtor Negus-Sons, Inc., was a Nebraska company primarily engaged in earth moving for commercial construction projects. Mutual of Omaha Bank is the successor in interest to Nebraska State Bank of Omaha ("NSB").

On December 30, 2003, the debtor executed a business loan agreement and promissory note with NSB for Loan 21040-03 ("Loan No. 3") in the amount of $1,469,077.63. The maturity date was June 30, 2008, and the loan was secured by a deed of trust and guaranty, both dated December 30, 2003.[5]

On May 15, 2006, the debtor executed a promissory note with NSB for Loan 2104007 ("Loan No. 7") in the amount of $1,030,217.00. The maturity date was June 10, 2008, and the loan was secured by a commercial security agreement dated May 15, 2006, a deed of trust dated May 15, 2006, and a guaranty dated April 4, 2005. The security agreement covered essentially all of the Debtor's assets. To perfect its interest in the Debtor's personal property, NSB filed two UCC financing statements with the Nebraska Secretary of State: Financing Statement 9803165525-1 ("Financing Statement 1") dated June 3, 2003, evidences the blanket lien on the Debtor's assets; and Financing Statement 9903287503-4 ("Financing Statement 4"), on July 28, 2003, amends Financing Statement 1 with regard to certain property pursuant to a subordination agreement with Nebraska Machinery Company.

In September 2007 the Debtor and Wells Fargo Equipment Finance, Inc., entered into a financing arrangement for a revolving loan secured by certain

---

[5] At oral argument, counsel for Mutual of Omaha alluded to the existence of a security agreement securing Loan No. 3 but could not direct the Court to it in the record. Upon careful review of the record, including the documents filed in support of Mutual of Omaha's Motion for Summary Judgment, we were unable to find a security agreement securing Loan No. 3 and will, for purposes of this appeal, assume that one does not exist.

equipment. In connection with the revolving loan, a collateral analyst for Wells Fargo, Jennifer Fry, wrote to NSB on September 20, 2007, requesting payoff figures for the two financing statements. The letter specifically referenced Financing Statements 1 and 4 and contained the following language:

> This letter is to confirm that upon receipt of funds from Wells Fargo Equipment Finance, Inc. for the **entire** payoff of **all** accounts that you agree to terminate your security interest in **all** the collateral [of Negus-Sons, Inc.] . . .
>
> We have prepared an amendment to your UCC filing(s) to effectuate **these terminations**. Please indicate your consent to the filing of these amendments, and your authorization for us to file them on your behalf, by signing in the space provided below.[6]

An eight-page list of equipment and other personal property was attached to the letter.

Bruce Cramer, a senior vice-president at NSB, signed the consent requested by Wells Fargo on September 21, 2007. In his deposition, Cramer admitted that his signature on the letter gave the appearance that he consented to the release of all of the liens securing Loan No. 7, not just liens on the equipment listed on the attachment. He testified:

> Q. I don't want to beat a dead horse about Exhibit 1. But after all this discussion, I mean, do you feel like you made a mistake signing this without contacting Jennifer Fry?
>
> A. Well, after seeing it the way it is, yes, I think I did.
>
> Q. Because you're saying your intent was never to release anything but the lien on the equipment?

---

[6] Emphasis added.

4

A. Yes.

Q. But you admit that this document purports to release all liens?

A. That's the way it looks to me, yes.

Q. Okay. So would it be fair to say that you made a mistake by signing this?

A. That's the way it would look to me, yes.[7]

The next day, an NSB administrative assistant responded with the payoff amount as of September 28, 2007. The total was $853,984.08. The letter noted that "[u]pon receipt of payoff **all** liens will be released."[8] Loan No. 7 was paid in full on September 28, 2007, but NSB never filed any termination statements. Instead, Wells Fargo terminated the two financing statements associated with Loan No. 7 approximately a year later by filing two financing statement "Amendments" on August 11, 2008.

On May 15, 2008, after Loan No. 7 had been paid, the Debtor executed a promissory note with Mutual of Omaha Bank for Loan 2104009 ("Loan No. 9"), in the amount of $303,262.50. The maturity date was November 15, 2008, and the loan was secured by a commercial security agreement, a deed of trust, and guaranties, all of which were dated May 15, 2008.

Negus-Sons, Inc., filed a Chapter 11 bankruptcy petition on September 23, 2009. The case was converted to one under Chapter 7 on February 18, 2010, on the

---

[7] Deposition of Bruce Cramer, 72:6-72:21, Bankruptcy Court for the District of Nebraska, Case No. 10-8064, Doc. No. 36.

[8] Emphasis added.

motion of the United States Trustee, and Appellee Rick D. Lange was appointed as the Chapter 7 trustee of the Debtor's bankruptcy estate.

## DISCUSSION

The parties (as well as the bankruptcy court) have framed this dispute largely in terms of whether the Amendments to NSB's Financing Statements filed by Wells Fargo were effective in terminating Mutual of Omaha's interest in the Property. The Trustee, United States, and Union Plans all argue that the uncontroverted facts establish that Wells Fargo had the authority to file the Amendments terminating Financing Statements 1 and 4. Alternatively, they argue that the Amendments were effective in terminating NSB's Financing Statements even if Wells Fargo didn't authorize them. The bankruptcy court determined that NSB authorized Wells Fargo to terminate the financing statements associated with Loan No. 7 and granted the Trustee's motion for summary judgment primarily on that basis.

The record supports the bankruptcy court's determination that Wells Fargo had the authority to terminate NSB's financing statements. However, we also affirm on the basis that termination of the financing statements was unnecessary because NSB's (and thus Mutual of Omaha's) security interest in the Property was extinguished when Loan No. 7 was paid in full in September 2007.[9] In light of these rulings, we do not need to address the more general question of whether unauthorized termination statements are effective.[10]

---

[9] We can affirm on any ground supported by the record. *Phipps v. FDIC*, 417 F.3d 1006, 1010 (8th Cir. 2005).

[10] We are also hesitant to endorse the holding in *Roswell Capital Partners LLC v. Alternative Const. Technologies*, 2010 WL 3452378, 8 (S.D. N.Y. 2010), relied on by the Trustee, that a termination statement filed by a third party is effective regardless of whether it was authorized. Neb. Rev. St. U.C.C. § 9-513(b), which governs the effectiveness of termination statements, states: "*Except as otherwise provided in section 9-510*, upon the filing of a termination statement

6

**A.    Wells Fargo authorized the termination of all liens perfected by Financing Statements 1 and 4.**

The bankruptcy court found that Wells Fargo authorized the termination statements based on the "four corners" of the written communications between Wells Fargo and NSB regarding the payoff of Loan No. 7 and termination of NSB's liens. Specifically, the bankruptcy court found that the September 20, 2007 letter from Wells Fargo requesting payoff figures and the termination of (or authority to terminate) NSB's security interest in "all the collateral of [Negus-Sons, Inc.]" and NSB's unqualified, signed consent to that letter gave Wells Fargo authority to terminate Financing Statements 1 and 4 in their entirety.  We agree.

As emphasized above, the September 20, 2007 letter from Wells Fargo specifically identified Financing Statements 1 and 4 (by filing number) and stated unequivocally that Wells Fargo was seeking "the **entire** payoff of **all** accounts [and] that you agree to terminate your security interest in **all** the collateral [of Negus-Sons, Inc.] . . ." NSB gave its unqualified consent to this request not once, but twice: first by signing the September 20 letter as requested by Wells Fargo, and second by stating in its payoff letter the next day that "Upon receipt of payoff **all** liens will be released." The unambiguous reference to "all" accounts, "all" collateral, and "all" liens leaves

_____

with the filing office, the financing statement to which the termination statement relates ceases to be effective. . . ."  (Emphasis added.)   § 9-510(a) states: "A filed record is effective only to the extent that it was filed by a person that may file it under Section 9-509."  And § 9-509 states: "A person may file an amendment other than an amendment that adds collateral covered by a financing statement or an amendment that adds a debtor to a financing statement only if: (1) *the secured party of record authorizes the filing*. . . ."  (Emphasis added.)  *Roswell's* holding appears to be contrary to the plain language of the Uniform Commercial Code. *See* William H. Henning & Fred H. Miller, 45 *The Uniform Commercial Code Law Letter* 1, 4 (2011) (criticizing Roswell as being contrary to the law).

no question that Wells Fargo sought and NSB consented to the release of all of NSB's liens in the Debtor's collateral covered by Financing Statements 1 and 4.

Mutual of Omaha contends that the reference to and attachment of a list of specific collateral in the September 20, 2007 letter limits the authority sought and consent granted to a termination of the liens against only the collateral listed. But nothing in the text of the letter conveys such a limitation. To the contrary, the repeated use of the word "all" in the letter, and NSB's September 21, 2007 response stating that "all liens will be released," indicates that the parties intended just that – a release of all of NSB's liens.

Moreover, to the extent the reference to specific collateral creates an ambiguity in the communications, that ambiguity is resolved – against NSB (and, thus, against Mutual of Omaha) – by NSB Senior Vice President Bruce Cramer's admission that NSB's consent to the September 20, 2007 letter mistakenly gave Wells Fargo the authority to release all of the liens securing Loan No. 7, not just liens on the equipment listed on the attachment.

Therefore, we affirm the bankruptcy court's determination that Wells Fargo had the authority to terminate Financing Statements 1and 4 in August 2008, thereby terminating Mutual of Omaha's security interest in the Debtor's personal property.

## B.  Mutual of Omaha's interest in the Property was extinguished when NSB was paid in full.

In its ruling, the bankruptcy court alluded to the fact that "when the bank received its requested payout for Loan No. 7, there was no basis for its continued assertion of an interest in the personal property collateral for that loan." That is the strongest basis for affirming the bankruptcy court's determination that Mutual of Omaha no longer has a security interest in the Property.

8

"A security interest cannot exist independent of the obligation it secures."[11] Consequently, once the loan associated with Financing Statements 1 and 4 (Loan No. 7) was paid off – and Mutual of Omaha concedes that it was – NSB's security in the Property was extinguished, regardless of whether the Financing Statements were terminated by NSB or Wells Fargo (with or without authority).

Mutual of Omaha contends that the Property also served as security for Loan No. 3, but, as noted above, Mutual of Omaha could not point to such a security agreement in the record, and we were, indeed, unable to find one. And the deed of trust securing Loan No. 3 only covers personal property attached to the real property subject to the deed of trust. There has been no suggestion that the Property is attached to that real property.

Therefore, we affirm the bankruptcy court on the additional ground that Mutual of Omaha's interest in the Property was extinguished when Wells Fargo paid off NSB's Loan No. 7 in September 2007.

## CONCLUSION

For the reasons stated above, we affirm the order of the bankruptcy court granting the Trustee's motion for summary judgment and denying Mutual of Omaha's motion for summary judgment.

---

[11] *In re Advanced Aviation, Inc.*, 101 B.R. 310, 313 (Bankr. M.D. Fla. 1989). *See also Unisys Fin. Corp. v. Resolution Trust Corp.*, 979 F.2d 609, 611 (7th Cir. 1992) ("A lien is parasitic on a claim. If the claim disappears—poof! the lien is gone."); *In re Leisure Time Sports, Inc.*, 194 B.R. 859, 861 (B.A.P. 9th Cir. 1996) ("A security interest cannot exist ... independent from the obligation which it secures.").