# United States Bankruptcy Appellate Panel

### For the Eighth Circuit

_____

No. 13-6005

_____

In re: Dennis E. Hecker

*Debtor*

------------------------------

Randall L. Seaver, Trustee

*Plaintiff - Appellant*

v.

New Buffalo Auto Sales, formerly known as New Buffalo Chrysler, LLC; Maurice J. Wagener; Palladium Holdings, LLC; GMAC Mortgage Corporation

*Defendants – Appellees*

_____

No. 13-6006

_____

In re: Dennis E. Hecker

*Debtor*

------------------------------

Randall L. Seaver, Trustee

*Plaintiff - Appellee*

v.

New Buffalo Auto Sales, formerly known as New Buffalo Chrysler, LLC; Maurice
J. Wagener; Palladium Holdings, LLC

*Defendants - Appellees*

GMAC Mortgage Corporation

*Defendant - Appellant*

_____

Appeal from United States Bankruptcy Court
for the District of Minnesota - Duluth

_____

Submitted:  June 26, 2013
Filed:  August 8, 2013

_____

Before FEDERMAN, Chief Judge, SALADINO and NAIL, Bankruptcy Judges.

_____

FEDERMAN, Chief Judge

Trustee Randall L. Seaver appeals from the Bankruptcy Court's Order[1] holding that he recover nothing from Defendants New Buffalo Auto Sales, LLC, Maurice J. Wagener, and Palladium Holdings, LLC, on his action to avoid a transfer which occurred when the Defendants perfected their liens on estate property postpetition. GMAC Mortgage Corporation appeals from that part of the Order holding that the automatic stay was not violated and that GMAC lacked standing in the matter. For the reasons that follow, we affirm as to the Trustee's appeal and dismiss GMAC's appeal for lack of appellate standing.

## INTRODUCTION

These consolidated appeals relate to a home previously owned by Debtor Dennis E. Hecker. One of the appeals – arising out of an adversary action brought by the Chapter 7 Trustee in Hecker's bankruptcy case against New Buffalo Auto Sales, Maurice J. Wagener (New Buffalo's principal), and Palladium Holdings – was previously before us.[2] As relevant here, that action sought to avoid the post-petition registration of prepetition judgments by such Defendants (which perfected the judgment liens) against the property under 11 U.S.C. § 549. The related appeal, which is before us for the first time here, concerns whether GMAC, which held second and third mortgages on the property against which such judgments were registered, is entitled to an order voiding such registrations as being in violation of the automatic stay.

---

[1] The Honorable Robert J. Kressel, United States Bankruptcy Judge for the District of Minnesota.

[2] *Seaver v. New Buffalo Auto Sales, LLC* (*In re Hecker*), 459 B.R. 6 (B.A.P. 8th Cir. 2011) ("*Hecker I*").

# FACTUAL BACKGROUND

When Hecker filed his Chapter 7 bankruptcy petition on June 4, 2009, he owned a home in Medina, Minnesota commonly referred to as "Northridge," which was registered Torrens property.[3] Northridge was encumbered by a first mortgage in favor of U.S. Bank in the original principal amount of $250,000. It was also encumbered by second and third mortgages in favor of GMAC Mortgage Corporation ("GMAC") (both of which also involved MERS as nominee or co-mortgagee) totaling $900,000 in their original principal amounts. In addition, Northridge had county and federal tax liens of more than $2.6 million against it. The value of Northridge is not clear, but no one contends that the property had a value in excess of one million dollars. Thus, the property was under water by at least two million dollars.

In addition, the Koch Group, LLC obtained a prepetition judgment against Hecker in the Hennepin County District Court in the amount of $813.67 on April 29, 2009. New Buffalo and Wagener, jointly, also obtained a prepetition judgment in the amount of $324,938.72 against Hecker in the Hennepin County District Court on May 7, 2009. Wagener is a member and the chief manager of New Buffalo. Koch sold its judgment to Palladium, whose in-house counsel testified at trial that it is in the business of buying claims to properties that are subject to foreclosure proceedings. We refer to Koch and Palladium collectively as "Palladium," and to New Buffalo, Wagener, and Palladium collectively as the "Judgment Creditors."

Neither the New Buffalo/Wagener judgment nor the Palladium judgment was registered against Northridge's Certificate of Title when Hecker filed his bankruptcy petition on June 4, 2009. Under Torrens law, the judgments did not

---

[3] In general, claims against Torrens property under Minnesota law are registered on a Certificate of Title, and that Certificate of Title is conclusive as to ownership of the real property and claims against it. *See Hecker I*, 459 B.R. at 12-13.

become liens against Northridge until they were registered on the Certificate of Title.[4]  Therefore, at the time Hecker's bankruptcy petition was filed, the Judgment Creditors were unsecured creditors.

In September 2009, U.S. Bank (as the first lienholder) sought and obtained relief from the automatic stay to foreclose on Northridge.  Since there clearly was no equity in the property, the Trustee did not oppose the motion.  The foreclosure sale was set for January 19, 2010.  Notice of U.S. Bank's foreclosure was served on December 11, 2009 by leaving a copy of the notice of foreclosure with an adult at the property.  Although Hecker was not personally served with the notice of foreclosure, the parties to this action agreed in Joint Pre-Trial Stipulations of Fact filed with the Bankruptcy Court (the "Pre-Trial Stipulations") that he had actual knowledge of it and, in fact, discussed the foreclosure and redemption process with counsel for U.S. Bank on several occasions.[5]

On January 7, 2010, the Trustee filed a motion for approval of a settlement with Hecker, his girlfriend, and Ralph Thomas, who was a business associate of Hecker's.  The agreement called for, *inter alia*, a $75,000 payment from Thomas to the Trustee in exchange for the bankruptcy estate's interest in Northridge.

According to the Pre-Trial Stipulations, on January 8, 2010, a notice of the foreclosure was mailed to MERS, as nominee for GMAC, at the address of record listed on Northridge's Certificate of Title.

The sheriff's foreclosure sale occurred on January 19, 2010, and, by a credit bid, U.S. Bank purchased Northridge for $213,263.  The sheriff's certificate of sale

_____

[4]  *See Hecker I*, 459 B.R. at 9 (*citing* Minn. Stat. Ann. §§ 508.63, 508A.63, and 548.09).

[5]  Joint Pre-Trial Stipulations of Fact (Doc. #78) at ¶¶ 25-30, *Seaver v. New Buffalo Auto Sales, LLC, et al.*, Adv. No. 10-5027 (Bankr. D. Minn. Nov. 13, 2012).

to U.S. Bank was registered on Northridge's Certificate of Title on January 19, 2010.

Under Minnesota law, a mortgagor's six-month redemption period begins on the day of the sale.[6] Lienholders wishing to redeem are required to record a notice of intent to redeem one week or more prior to the expiration of the mortgagor's redemption period.[7] If the mortgagor fails to exercise its right of redemption, then lienholders who have recorded notices of intent are each given a seven day period to exercise their own right of redemption, beginning with the most senior lien.[8] Those who do not exercise that redemption right lose their liens. Here, the Trustee held the mortgagor's (Hecker's) right to redeem, which was set to expire on July 19, 2010, the date which was six months after the U.S. Bank foreclosure.

According to the Bankruptcy Court, the Trustee did not monitor Northridge's Certificate of Title or any actions relating to U.S. Bank's foreclosure after the stay was lifted. Indeed, while the Trustee had the right to redeem the property by paying off the U.S. Bank obligation before the expiration of the redemption period, there was no reason to do so since he would have then held the property subject to all the other mortgages and tax liens.[9] But GMAC, which held a second mortgage with some equity value, had good reason to redeem. For

---

[6] Minn. Stat. Ann. § 580.23.

[7] Minn. Stat. Ann. § 580.24(a).

[8] *Id.*

[9] Minn. Stat. Ann. § 580.27 ("If redemption is made by the owner of the property sold . . . such redemption annuls the sale."); *Joing v. O & P P'ship* (*In re Joing*), 61 B.R. 980, 983 n. 2 (Bankr. D. Minn. 1986) ("The effect of the redemption is as if no sale had occurred – *i.e,* the property remains subject to all liens senior and junior to the foreclosing lien."), *vacated on other grounds*, 82 B.R. 495 (D. Minn. 1987).

whatever reason, it did not protect its position by doing so.[10]  As a result, and as discussed more fully below, the positions that the Trustee and GMAC find themselves in now – namely, without the benefit of the equity above U.S. Bank's lien – are a result of (i) GMAC's failure to protect its own interest; and (ii) the estate's having no interest of any value to protect in the first place.

In any event, after the foreclosure, the Bankruptcy Court approved the settlement between the Trustee and Thomas on January 27, 2010.  The Trustee delivered a trustee's deed in favor of Thomas to William Skolnick, an attorney who was representing Hecker and, purportedly, Thomas.  However, neither Thomas nor Skolnick registered the trustee's deed, and the Registrar of Titles did not issue a Certificate of Title to Thomas.  Therefore, during the entire redemption period, Northridge remained registered to Hecker.

In February 2010, GMAC obtained a Bankruptcy Court order lifting the automatic stay.  While GMAC at that point had the right to protect its second position after U.S. Bank's foreclosure by paying that bank off, or by foreclosing its own mortgage, it did not do so.

During the redemption period, in March 2010, the Trustee discovered that the sale of the estate's interest to Thomas was not what it appeared to be.  Indeed, Thomas informed the Trustee that he had not even been aware of the transaction, and the Trustee learned that the source of the $75,000 payment was four different irrevocable trust accounts, one of which was named the Hecker Irrevocable Trust. However, the Trustee took no action to unwind the settlement agreement or to recover the title to Northridge during the redemption period.  It was not until November 23, 2010, at the Trustee's request, that Thomas executed a quit claim deed conveying all of his interest in Northridge back to the Trustee.

---

[10]  Nor did any of the tax lien holders, although they are not asserting any interest in the property or in their liens at this point.

In April 2010, the Judgment Creditors registered their judgments against the Certificate of Title to Northridge. As discussed more fully below, the crux of the GMAC appeal here is that the Judgment Creditors did not seek relief from the stay before registering these judgments and, therefore, the registrations and the subsequent redemption from U.S. Bank are void. And the crux of the Trustee's appeal is that these registrations created an avoidable (as opposed to void) lien, which he contends had value to the estate. Rather than having the lien declared void, therefore, the Trustee seeks to capture the benefit the Judgment Creditors derived from GMAC's failure to protect its position.

In any event, the estate's right to redeem the property expired on July 19, 2010. GMAC, the tax-lien holders, and the Trustee (as well as Thomas) all failed or chose not to redeem from U.S. Bank. Absent action by anyone else, the consequence would have been that U.S. Bank would have become the owner of Northridge. However, since the Judgment Creditors had registered their judgments, New Buffalo was able to redeem the property under Minnesota law by paying $218,075.30, in satisfaction of Hecker's debt to U.S. Bank, on July 22, 2010. Under § 580.27 of the Minnesota Statutes, this operated as an assignment to New Buffalo of U.S. Bank's interest in Northridge. Shortly thereafter, New Buffalo then sold Northridge to Palladium for $618,075.30. Palladium paid New Buffalo $80,000 in cash and gave a mortgage on Northridge in the amount of $320,000.[11] While not altogether clear, it appears that the Trustee seeks judgment against the Judgment Creditors in the amount of $400,000, representing the net proceeds received for such sale.

In the few days before the Judgment Creditors redeemed from U.S. Bank, Palladium's attorney spoke several times with the Trustee regarding Northridge. During one of those conversations, the Trustee told Palladium's attorney that he

---

[11] According to Palladium's attorney at trial, Palladium, which was in the business of buying such claims, had fronted the money (apparently $218,075.30) needed to pay off U.S. Bank.

would not do anything to stop the Judgment Creditors' redemption and would not assert that the automatic stay precluded a redemption. But once the redemption period had passed, and it had become obvious that the Judgment Creditors were in position to capture the equity that might otherwise have gone to U.S. Bank or GMAC, the Trustee registered a notice of the bankruptcy case on Northridge's Certificate of Title on July 23, 2010. Four days after the redemption, on July 26, the Trustee filed this adversary proceeding to avoid the Judgment Creditors' prepetition judgments as preferences under § 547, and registered a notice of *lis pendens* on the Certificate of Title.[12] He later amended his complaint to add the claim under § 549 that is now before the BAP. The Trustee made no claims for violation of the automatic stay by the Judgment Creditors in registering their judgment liens. As indicated, that issue was later raised by GMAC.

On March 16, 2011, while the Trustee's adversary proceeding was pending in the Bankruptcy Court, and long after its right to redeem expired under the U.S. Bank foreclosure, GMAC published a notice of planned foreclosure sale. The Judgment Creditors obtained an injunction in state court against GMAC's foreclosure sale, the basis being that GMAC's mortgage had been wiped out by completion of the U.S. Bank foreclosure proceedings without GMAC redeeming. GMAC filed a petition in Hennepin County, Minnesota naming the Judgment Creditors as defendants, asserting U.S. Bank's foreclosure was invalid and that the Judgment Creditors maintained no interest in Northridge. The Hennepin County Court granted the preliminary injunction because, *inter alia*, it concluded that the Judgment Creditors were likely to prevail on the merits.[13]

---

[12] After Palladium learned that the Trustee was attacking the New Buffalo redemption, Palladium attempted to redeem the Koch judgment as a precaution. It appeared, however, that the Koch judgment had been satisfied and so a question arose as to the validity of the second attempt at redemption. In any event, Palladium has abandoned any argument relating to the Koch redemption but instead maintains that its title is derived from the New Buffalo redemption.

[13] Order Granting Plaintiffs' Motion for a Temporary Injunction, *attached as Exhibit B to* Verified Notice of Hearing and Motion of Defendants New Buffalo

At that point, GMAC was interpleaded in the adversary proceeding. In the Bankruptcy Court, and here, GMAC contends that the Judgment Creditors' registration of their judgment liens was void as being in violation of the automatic stay. GMAC also asserts that the U.S. Bank foreclosure was wrongful. If both of those issues were ruled in GMAC's favor, then the status of Northridge and its liens would presumably revert back to its pre-bankruptcy condition, and GMAC would get another opportunity to protect its liens.

In *Hecker I,* we held that the registration of the Judgment Creditors' judgments was an avoidable transfer under § 549. In so holding, we concluded that even though the Court had authorized the sale of whatever remaining interest the estate had in the property during the redemption period, the estate still had some interest at the time of the registrations because the "Thomas" deed had not been recorded on the Torrens certificate. Since we reversed the Bankruptcy Court's grant of summary judgment and held the transfer avoidable, we did not reach the issue of the appropriate remedy under §§ 550 and 551, and remanded on that question.

On remand, the Trustee did not ask that the property be returned to the estate. He conceded at oral argument in this appeal that he does not want the property back, clearly because there was no equity in the property, and returning it to the estate subject to the prior liens would produce nothing of value for the estate. Instead, he sought a money judgment for the value of the avoided judgments, consisting of the profit the Judgment Creditors made because they registered their liens and thereby benefitted from GMAC's failure to protect its position. In any event, the issue of who is entitled to the windfall created by GMAC's inattention – the estate or New Buffalo – was to be determined by the Bankruptcy Court on remand.

Auto Sales, LLC and Palladium Holdings, LLC for an Order Joining a Necessary Party and Requiring Interpleader (Doc. #54) at 5-6, *Seaver v. New Buffalo Auto Sales, LLC, et al.*, Adv. No. 10-5027 (Bankr. D. Minn. Feb. 3, 2012).

As stated, GMAC had been added as a party to the adversary proceeding after remand because it was attempting to foreclose on the mortgage which was wiped out by the U.S. Bank foreclosure and the ensuing expiration of the redemption period. As part of the proceedings on remand, GMAC contended that the registration of the Judgment Creditors' judgments was void as being in violation of the automatic stay. The basis for that argument was our determination in *Hecker I* that the estate retained an interest in the property because the "Thomas" deed had never been recorded.

On remand after *Hecker I*, the Bankruptcy Court held, as relevant here, that the property transferred to the Judgment Creditors by virtue of the registration of the judgment liens had no value to the estate and, therefore, no damages would be awarded against any of the defendants under § 550. The Trustee appeals.

In addition, the Bankruptcy Court considered whether the Judgment Creditors' registration of their judgments was void as being in violation of the automatic stay. After indicating that it had doubts as to whether GMAC even had standing to raise the issue, the Court held that the automatic stay was not violated and that "GMAC's claims are without merit." GMAC appeals.

## STANDARD OF REVIEW

We review the Bankruptcy Court's findings of fact for clear error and conclusions of law *de novo*.[14]

---

[14] *Lange v. Mutual of Omaha Bank* (*In re Negus-Sons, Inc.*), 460 B.R. 754, 755 (B.A.P. 8th Cir. 2011).

11

## DISCUSSION

### *GMAC's Appeal – Violation of the Automatic Stay*

GMAC has raised two separate issues concerning the foreclosure process. One is a bankruptcy issue, dealing with whether the action of the Judgment Creditors in registering their liens during the redemption period is void as being in violation of the automatic stay. The other is a state law issue, dealing with whether U.S. Bank validly conducted the foreclosure sale. If the foreclosure were held not to have been validly conducted, then it would presumably have to be done again, such that GMAC might be put in position to protect the mortgages it appears to have lost by not exercising its redemption rights. At oral argument, the Trustee asserted that the Bankruptcy Court ruled that the foreclosure was proper when it ruled that service on Hecker was proper and GMAC's claims "had no merit." But in order to make a determination as to whether the foreclosure sale was validly conducted, U.S. Bank would need to be made a party, which was not done in the bankruptcy proceeding. Therefore, we conclude that question was not decided in the Bankruptcy Court and is not before us. In fact, the Hennepin County Court case was never concluded and is the forum for GMAC to mount a challenge to the validity of U.S. Bank's foreclosure sale in Hennepin County.

As to the Judgment Creditors' lien registrations, GMAC argues that since that action violated the automatic stay, and was the basis for the Judgment Creditors being able to redeem by paying off U.S. Bank after foreclosure, then both the lien registrations and the redemption are void.

We held in *Hecker I* that whatever interest the estate held in Northridge was still property of the bankruptcy estate at the time of the registrations because the "Thomas" deed had never been recorded. Section 362(c) provides that the stay of an act against property of the estate continues until such property is no longer property of the estate. We conclude that the stay was violated, at least in a technical sense, since Northridge was still titled in Hecker's name at the time of such registrations.

12

In *Vierkant*,[15] we held that actions taken in violation of the automatic stay are *void ab initio,* rather than merely being voidable at the request of an interested party. While this issue has not been ruled on by the Eighth Circuit,[16] we sided with the majority of the Circuit Courts in so holding, the rationale of those courts being that if stay violations were merely voidable, debtors would be obligated to spend a considerable amount of time and money policing and litigating creditor actions.[17] And, since § 362(d) allows creditors to obtain retroactive relief annulling the stay for technical or inadvertent violations which do not harm the estate, the burden should properly be placed on such creditors to obtain that relief, and not on the debtors who are attempting to work their way through the bankruptcy process.[18]

While the Trustee would ordinarily be expected to seek redress for violations of the automatic stay, the Trustee chose not to do so here. That is no doubt because the Trustee is seeking to recover the benefit the Judgment Creditors received by registering their judgment liens. If the Judgment Creditors' action in registering their liens without obtaining stay relief were to be held void, then the Trustee would not be able to attempt to piggyback onto those liens to recover any

---

[15] *LaBarge v. Vierkant* (*In re Vierkant*), 240 B.R. 317 (B.A.P. 8th Cir. 1999).

[16] *See Riley v. United States*, 118 F.3d 1220, 1222 n.1 (8th Cir. 1997), *cert. denied*, 523 U.S. 1020, 118 S.Ct. 1299, 140 L.Ed.2d 466 (1998).

[17] *Vierkant*, 240 B.R. at 323-24 (*citing Soares v. Brockton Credit Union* (*In re Soares*), 107 F.3d 969 (1st Cir.1997); *Constitution Bank v. Tubbs*, 68 F.3d 685 (3d Cir.1995); *Parker v. Bain*, 68 F.3d 1131 (9th Cir.1995); *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 31 F.3d 1020 (10th Cir.1994); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522 (2d Cir.1994); *Albany Partners, Ltd. v. Westbrook* (*In re Albany Partners, Ltd.*), 749 F.2d 670 (11th Cir.1984); *Matthews v. Rosene*, 739 F.2d 249 (7th Cir.1984); *Smith v. First America Bank, N.A.* (*In re Smith*), 876 F.2d 524 (6th Cir.1989); *National Labor Relations Bd. v. Edward Cooper Painting, Inc.*, 804 F.2d 934 (6th Cir.1986)).

[18] *Id.*

equity captured by those liens when GMAC failed to protect its second lien position.

At the outset, the Bankruptcy Court "doubted" that GMAC has standing in this proceeding at all. In response, GMAC points out that the Eighth Circuit has indicated in general that creditors, and not just the debtor, have standing to seek to enforce the automatic stay.[19] But apart from the question of whether GMAC could raise the stay violation in the Bankruptcy Court, there is a separate question as to whether it has standing to appeal.

"Ordinarily, a party to a lawsuit has no standing to appeal an order unless he can show some basis for arguing that the challenged action causes him a cognizable injury, *i.e.*, that he is 'aggrieved' by the order."[20] "To appeal from an order of the bankruptcy court, appellants must have been directly and adversely affected pecuniarily by the order."[21] "This principle, also known as the 'person aggrieved' doctrine, limits standing to persons with a financial stake in the

---

[19] *See Ahlers v. Norwest Bank Worthington* (*In re Ahlers*), 794 F.2d 388, 394 n.4 (8th Cir. 1986) ("The automatic stay also provides creditor protection."), *rev'd on other grounds*, *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).

[20] *Yukon Energy Corp. v. Brandon Invs., Inc.* (*In re Yukon Energy Corp.*), 138 F.3d 1254, 1259 (8th Cir. 1998) (quoting *Spencer v. Casavilla*, 44 F.3d 74, 78 (2d Cir. 1994)). *Accord AgriProcessors, Inc. v. Iowa Quality Beef Supply Network, LLC* (*In re Tama Beef Packing, Inc.*), 92 F.App'x 368, 369 (8th Cir. 2004) (holding that, to have standing to appeal, the appellant must show it had a pecuniary interest in the outcome and that the challenged action caused cognizable injury, *i.e.*, that the party was aggrieved by the order); *Nangle v. Davis* (*In re Nangle*), 83 F.App'x 141, 142 (8th Cir. 2003) (same).

[21] *Williams v. Marlar* (*In re Marlar*), 252 B.R. 743, 748 (B.A.P. 8th Cir. 2000), *aff'd on other grounds* 267 F.3d 749 (8th Cir. 2001); *cited in In re Tama Beef*, 92 F.App'x at 369; *In re Nangle*, 83 F.App'x at 142.

bankruptcy court's order."[22]  "The 'person aggrieved' standard, which is more stringent than the constitutional test for standing, serves the acute need to limit collateral appeals in the bankruptcy context."[23]  "A debtor has standing to appeal if the bankruptcy court order 'diminishes the person's property, increases the person's burdens, or impairs the person's rights.'"[24]  "Whether an appellant is a person aggrieved is a question of fact."[25]

Even assuming that the registrations violated the stay, GMAC has not shown that the Bankruptcy Court's Order diminished its property, increased its burdens, or impaired its rights.  Nor has it demonstrated that it was pecuniarily harmed by the registrations and redemption.  The registrations of the judgments had absolutely no effect on GMAC's liens because GMAC's liens remained superior to those judgment liens after the registrations.  In other words, assuming the foreclosure sale was validly held, then GMAC's inattention was going to result either in (1) U.S. Bank owning the property free and clear of GMAC's liens, or (2) the Judgment Creditors' owning the property free and clear of GMAC's liens.  If for some reason the foreclosure were to be set aside by the Minnesota Court as not complying with state law, then GMAC would be restored to its second and third mortgage positions, ahead of the Judgment Creditors.  Under none of these scenarios was GMAC's mortgage position harmed by registration of the Judgment Creditors' liens, as opposed to its failure to protect its own position.  Further, even as an unsecured creditor, GMAC would not benefit from voiding the Judgment Creditors' registrations because, as explained below, the estate would not benefit from voiding those liens.

---

[22] *Id.*

[23] *Id.* at 749.

[24] *In re Marlar*, 267 F.3d 749, 753 n.1 (8th Cir. 2001).

[25] *Williams v. Marlar*, 252 B.R. at 749 (citation omitted).

Notably, in the Order granting the Judgment Creditors' Motion for Temporary Injunction entered on May 26, 2011, the Hennepin County Court concluded that the "only argument with any apparent merit," raised by GMAC in challenging the validity of U.S. Bank's foreclosure sale was that New Buffalo's judgment lien could not have attached to Northridge because it was Dennis Hecker's homestead.[26] However, the Court said, "even if Defendants [GMAC and MERS] succeeded in invalidating New Buffalo's redemption from the U.S. Bank foreclosure sale by establishing that North Ridge was exempt as a homestead, this would not change the fact that Defendants' mortgages were wiped out when they failed to redeem from the U.S. Bank sale."[27] Thus, that Court recognized as we do that GMAC was harmed not by registration of the Judgment Creditors' liens, but by its own failure to protect its interest.

In sum, if GMAC was "aggrieved," it was either by a wrongful foreclosure by U.S. Bank (as GMAC continues to assert) or by its own failure to protect its interests, not by the registration of the judgments or the Bankruptcy Court's Order. Consequently, we conclude that GMAC does not have standing to appeal any violation of the stay by the Judgment Creditors and its appeal is, therefore, dismissed. For that reason, we do not consider the technical violation of the stay raised by GMAC.

### The Trustee's Claim Under § 550

In *Hecker I*, we held that the registration of the judgment by New Buffalo was an avoidable postpetition transfer under § 549, and we remanded to the Bankruptcy Court to determine the appropriate remedy under either § 550 or § 551.

---

[26] Order Granting Plaintiffs' Motion for a Temporary Injunction, *attached as Exhibit B to* Verified Notice of Hearing and Motion of Defendants New Buffalo Auto Sales, LLC and Palladium Holdings, LLC for an Order Joining a Necessary Party and Requiring Interpleader (Doc. No. 54) at 6, *Seaver v. New Buffalo Auto Sales, LLC, et al.*, Adv. No. 10-5027 (Bankr. D. Minn. Feb. 3, 2012).

[27] *Id.*

The Trustee proceeded under § 550 only. Section 550(a) provides: "to the extent that a transfer is avoided under section … 549 … the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property."

As we stated in *Hecker I*, the Trustee is entitled to a judgment – either by return of the property transferred or the value of such property – that will "restore the bankruptcy estate to its prior financial condition."[28] On remand, and at oral argument on this appeal, the Trustee stated that he seeks only to recover a money judgment for the value of the property transferred, and not the property itself.

The Trustee cites a number of cases which stand for the proposition that a transfer can be avoided under § 549 even though the estate was not diminished by such transfer. But those cases concern the question of *whether a transfer is avoidable* under § 549, a question which we dealt with in *Hecker I*, and do not need to face again. Instead, the issue here is *what remedy is available* under § 550. The cases cited by the Trustee on that point, therefore, do not apply.

Immediately prior to the registration of the judgment liens by the Judgment Creditors in April 2011, what the Trustee held was a right of redemption. Under Minnesota law, the exercise of the right of redemption by the mortgagor (here, the Trustee) serves to annul the foreclosure sale, with the property remaining subject to all liens senior and junior to the foreclosing lien.[29] Thus, had the Trustee

---

[28] *See also USAA Fed. Sav. Bank v. Thacker* (*In re Taylor*), 599 F.3d 880, 890 (9th Cir. 2010) ("The purpose of § 550(a) is 'to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred.'"); *Rushton v. Bank of Utah* (*In re C.W. Min. Co.*), 477 B.R. 176, 185 (B.A.P. 10th Cir. 2012) (same).

[29] Minn. Stat. Ann. § 580.27 (redemption by the owner annuls the sale); *Joing v. O & P P'ship* (*In re Joing*), 61 B.R. 980, 983 n.2 (Bankr. D. Minn. 1986) ("The effect of the redemption is as if no sale had occurred – *i.e,* the property remains subject to all liens senior and junior to the foreclosing lien."), *vacated on other grounds*, 82 B.R. 495 (D. Minn. 1987).

redeemed, he would have owned the property subject to those liens. In other words, under no circumstance would the Trustee have recovered value to the estate by redeeming. For that reason, the right of redemption simply had no value to the Trustee. That is why, sensibly, he did not exercise it in the first place, and why he does not want it back now as the remedy for avoiding the transfer. But that is also why the estate suffered no damages from registration of the judgments, as the Bankruptcy Court held on remand.

Instead, the Trustee seeks to piggyback onto the Judgment Creditors' right of redemption. Under Minnesota law, as explained above, lienholders wishing to redeem must record a notice of intent to redeem one week or more prior to the mortgagor's redemption period.[30] If the mortgagor fails to exercise its right of redemption, lienholders who have recorded notices of intent are each given a seven day period to exercise their own right of redemption, beginning with the most senior lien.[31] Those who do not exercise that redemption right lose their liens.[32] Neither GMAC nor the taxing authorities registered intents to redeem before the expiration of the Trustee's redemption period. Had the Judgment Creditors not exercised their redemption rights, then the foreclosing creditor, U.S. Bank, would have become the owner of the property, and would have captured the equity that GMAC forfeited by failing to protect its mortgage positions.[33] Instead, however,

---

[30] Minn. Stat. Ann. § 580.24(a).

[31] *Id.*

[32] *Page v. City of Duluth*, 945 F.2d 241, 245 (8th Cir. 1991) ("It is well settled under Minnesota law that a junior creditor who fails to redeem under a senior creditor's foreclosure sale forfeits his or her interest in the subject property.")

[33] *Allis v. Foley*, 147 N.W. 670, 672 (Minn. 1914) ("The position occupied by the purchaser at the sale during the period allowed for redemption is somewhat anomalous under our statutes. The legal title does not vest in him at the sale but remains in the mortgagor or his grantees. Yet, if no redemption be made, the legal

consistent with Minnesota law, the Judgment Creditors stepped in to exercise their lien rights, and thereby captured GMAC's equity instead of U.S. Bank. The Trustee here seeks to recover the benefit that the Judgment Creditors received, but that benefit was achieved at the expense of U.S. Bank and GMAC, not the estate. Similar to GMAC discussed above, the estate was not harmed at all by the registration of the judgment liens and the Judgment Creditors' subsequent exercise of their redemption rights. Unlike the estate's right of redemption, the Judgment Creditors' right had value because of GMAC's inaction. But, those were rights held by those creditors. The estate had no right to step into their shoes and exercise them.

Indeed, conceding that the estate's interest had no value in and of itself, the Trustee's counsel stated at oral argument that what the estate really lost, and what he would have sought if the Judgment Creditors had requested relief from the stay, was "the ability to use his right of redemption to leverage for the benefit of creditors." We interpret counsel's statements to mean that the Trustee could have "leveraged" the estate's right of redemption and the automatic stay to get money from the Judgment Creditors (or any other party who might be interested in using the judgments to redeem). But, of course, the estate's right of redemption had no value, and the Trustee had therefore not opposed motions for relief filed by either U.S. Bank or GMAC. Perhaps counsel was saying that if the Judgment Creditors had filed a motion for relief from the stay prior to registering their judgment liens, he would have filed or threatened to file an objection in order to extract funds from them. In any event, the loss of a right to use some sort of "leverage" to get money to which the estate is not entitled is not the basis for a cause of action.

---

title passes to and vests in the purchaser at the expiration of the period allowed therefor, and, when the title becomes absolute in him, it relates back and takes effect as of the date of the mortgage under which the sale was made.").

## CONCLUSION

For the foregoing reasons, GMAC's appeal is DISMISSED for lack of standing, and the Judgment of the Bankruptcy Court awarding nothing to the Trustee is AFFIRMED.

_____